# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5437 | **DATE** | 2/15/2001 |
| **CASE TITLE** | H.R.R. Zimmerman Co. vs. Tecumseh Products Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the attached Memorandum Opinion and Order, leave to file Tecumseh's proposed Affirmative Defenses 8 and 9 is denied, and leave to file Affirmative Defense 10 is denied without prejudice to a subsequent motion by Tecumseh for leave to file an Affirmative Defense that sets out the elements of the purported "good cause" defense. This Order, along with the Order of November 29, 2000 [DKT #50], resolves all issues on Defendant's Motion for Leave to File First Amended Answer, Affirmative Defenses and Counterclaim [DKT #31].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 22 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| | | | 2/15/2001 date mailed notice | |
| gmr | courtroom deputy's initials | 01 FEB 21 AM 10:00 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| H.R.R. ZIMMERMAN CO., <br> Plaintiff, | ) <br> ) <br> ) |
| v. | ) Case No. 99 C 5437 <br> ) |
| TECUMSEH PRODUCTS CO. <br> Defendant. | ) Judge Ronald A. Guzman <br> ) Magistrate Judge Geraldine Soat Brown <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff H.R.R. Zimmerman ("Zimmerman") filed this action in August, 1999 alleging that defendant Tecumseh Products Co. ("Tecumseh") violated the Illinois Franchise Disclosure Act (815 ILCS 705/1 *et seq.*, the "IFDA") and its contract by terminating Industrial Engine and Parts ("Industrial"), an operating division of Zimmerman, as a distributor without notice or good cause. Tecumseh moved in July, 2000 for leave to file an amended answer including six new affirmative defenses and a counterclaim. [DKT #31.] This Court, in its November 29, 2000 Memorandum Order and Opinion [DKT #50] granted Tecumseh leave to file its First Amended Answer, Affirmative Defenses and Counterclaim, except that the Court reserved ruling as to proposed Affirmative Defenses 8, 9 and 10 in order to give Tecumseh an opportunity to file and serve a brief with additional authority supporting these proposed Affirmative Defenses, and Zimmerman an opportunity to respond to Tecumseh's supplemental brief.[1] For the following reasons, leave to file Tecumseh's proposed Affirmative Defenses 8 and 9 is DENIED, and leave to file Affirmative

---

[1] See, Tecumseh's Supplemental Memorandum filed on December 13, 2000 ("Def.'s Supp. Mem."), Supplemental Objections filed by Plaintiff Zimmerman on December 29, 2000 ("Pl.'s Supp. Obj.") and Tecumseh's Reply to Plaintiff's Supplemental Objections filed on January 5, 2001 ("Def.'s Reply").

Defense 10 is DENIED without prejudice to a subsequent motion by Tecumseh for leave to file an Affirmative Defense that sets out the elements of the purported "good cause" defense.

## DISCUSSION

Fed.R.Civ.P.15(a) provides that leave of court to amend a pleading "shall be freely given when justice so requires." Leave to amend is freely given unless the amendment shows bad faith, undue prejudice or delay, or the amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Seventh Circuit defined "futile repleadings" to include "restating the same facts using different language, reasserting claims previously determined, failing to state a valid theory of liability, and the inability to survive a motion to dismiss." *Garcia v. City of Chicago, Illinois*, 24 F.3d 966, 970 (7th Cir. 1994) (citations omitted). Thus, this Court need not determine whether or not the proposed defenses will ultimately prevail, but only whether or not they are "futile."

Proposed Affirmative Defense 8 – Commerce Clause

Tecumseh's proposed Affirmative Defense 8 states (in full):

The application of the [Illinois] Franchise [Disclosure] Act to the agreement between the parties interferes with interstate commerce in such a manner as to violate the Commerce Clause of the United States Constitution.

This Court indicated in its November 29, 2000 Order that Tecumseh had cited no authority supporting this proposed defense and that "in light of the history of litigation concerning the [IFDA], Tecumseh must demonstrate that its constitutional... challenge to the Act [is] not futile in order to be given leave to file..." (see November 29, 2000 Order [DKT #50.]) However, Tecumseh, after filing two more memoranda, still has not sufficiently demonstrated that its constitutional challenge under the Commerce Clause is not "futile." Tecumseh has not sufficiently pleaded the elements of such an affirmative defense and Tecumseh's reliance on *Morley-Murphy Co. v. Zenith Electronics Corp.*, 142 F.3d 373 (7th Cir. 1998), is misplaced.

2

The initial problem with Tecumseh's proposed Affirmative Defense 8 is that Tecumseh fails to plead the elements of the defense. It is well-settled in this Circuit that

> [a]ffirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure. *Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 736-37 (N.D.Ill.1982). Thus, defenses must set forth a "short and plain statement," Fed.R.Civ.P. 8(a), of the defense. *Bobbitt*, 532 F.Supp. at 737.

*Heller Financial, Inc. v. Midwhey Powder Co., Inc.* 883 F.2d 1286, 1294 (7th Cir.1989). In *Heller*, the Court of Appeals affirmed the striking of "bare bones conclusory allegations" that "omitted any short and plain statement of facts and failed totally to allege the necessary elements of the alleged claims." *Heller*, 883 F.2d at 1295. Tecumseh argues that the Commerce Clause invalidates state statutes that "may adversely affect interstate commerce by subjecting activities to *inconsistent regulations*." (Def.'s Supp. Mem. at 4, emphasis added.) However, Tecumseh's Affirmative Defense 8 fails to allege any facts demonstrating that the application of the IFDA in this case "subjects [its] activities to inconsistent regulations."

Zimmerman points out that proposed Affirmative Defense 8 "contains no allegations that Industrial operated multiple franchises, the terminations of which were governed by multiple states' franchise laws." (Pl.'s Supp.Obj. at 5). There is nothing in Tecumseh's proposed Affirmative Defense 8 to support a conclusion that Tecumseh's decision to terminate Industrial was governed by the laws of any state other than Illinois or that such laws are inconsistent with the IFDA. Thus, the Court is left only with a hypothetical argument that the IFDA, as applied in this case, subjects Tecumseh to inconsistent statutory obligations. Even for pleading purposes, that is simply insufficient. Plaintiff Zimmerman correctly observes that, "Industrial's cause of action under the Act cannot be defeated by a defense based on speculation that there *might* be a conflict." (Pl.'s Supp.Obj. at 7 citing, *inter alia*, to *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).

Furthermore, under the facts as alleged in Zimmerman's Complaint, it does not appear that Tecumseh can prove any set of facts that would support its proposed Commerce Clause defense. Tecumseh relies primarily on *Morley-Murphy Co. v. Zenith Electronics Corp.*, 142 F.3d 373 (7th Cir. 1998), a case brought by a Wisconsin corporation (plaintiff) who alleged that a Delaware manufacturer (defendant) had terminated their dealership relationship in violation of the Wisconsin Fair Dealership Act ("WFDL"). The plaintiff in *Morley-Murphy* had obtained a jury verdict awarding it $605,590 for lost profits on its projected sales from its Wisconsin locations, and an additional $1,081,392 for lost profits on projected sales from its dealerships located in Iowa and Minnesota. 142 F.3d at 378. The defendant argued that the WFDL violated the Commerce Clause by allegedly forcing the defendant to continue to use a Wisconsin dealer in states other than Wisconsin. The Seventh Circuit did not reach the Commerce Clause issue because it held that the WFDL did not apply to the termination of "out-of-state dealerships," and, therefore, the plaintiff could not receive damages arising out of the termination of its dealerships in Iowa and Minnesota.

The IFDA expressly limits its application to "a franchised business located in this State" (815 ILCS 705/19), thus avoiding the potential problem that the Seventh Circuit suggested might arise if the WFDL were applied to franchises located outside of Wisconsin. *See, McDonald's Corp. v. C.B. Mgmt. Co., Inc.*, 13 F.Supp.2d 705, 713-14 ( N.D.Ill. 1998), refusing to apply the IFDA to franchises located outside of Illinois.

In the present case, there is no suggestion that Industrial operated more than a single distributorship located in Waukegan, Illinois. Zimmerman asserts, and Tecumseh does not deny, that Industrial operated solely out of the state of Illinois, that Industrial's office and warehouse are located in Illinois, and that Industrial's contract formation, ordering, shipping and payment activity all took place in Illinois. (Pl.'s Supp. Obj. at 6.) There is no dispute that Industrial's sales territory included portions of neighboring states (Complaint ¶5), and Tecumseh argues that two-thirds of

Industrial's sales occurred outside of Illinois. (Def.'s Supp. Mem. at 2.) However, *Morley-Murphy* does not support Tecumseh's theory that applying the IFDA to Industrial's single distributorship located in Illinois which also makes sales in other states violates the Commerce Clause by subjecting Tecumseh to conflicting obligations arising from other states' franchise laws. Indeed, Tecumseh admits that it has found no case that addresses that issue. (Def.'s Supp. Mem. at 2.)[2]

That Zimmerman is claiming over a million dollars in damages from Tecumseh does not of itself prove a violation of the Commerce Clause, and Tecumseh's citation of *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970) (Def.'s Supp. Mem. at 5) does not support its position.

Tecumseh has not been able to demonstrate that it can prove any set of facts that will support a claim that the application of the IFDA in this case will violate the Commerce Clause. Leave to file proposed Affirmative Defense 8 is denied.

Proposed Affirmative Defense 9 – Preemption

Tecumseh's proposed Affirmative Defense 9 states:

The application of the Franchise Act to sales outside of Illinois has been preempted by Congress through the Federal Trade Commission Act and the regulation of the Federal Trade Commission.

---

[2] Like *McDonald's Corp.*, 13 F. Supp 2d. 705, *supra,* most of the cases discussing the subject of extraterritorial application of state franchise statutes address choice-of-law provisions and the question of whether a state's franchise statute has extraterritorial application to *out-of-state franchises*. Many courts have found the application of the IFDA and similar statutes to be strictly limited to franchises located within the home state. *See, Budget Rent-A-Car Corp. v. Shaffer, Inc.*, No. 91 C 2721, 1992 WL 137596, at *7-8 (N.D.Ill. June 2, 1992) (finding that IFDA did not apply to Alabama franchisee); *Highway Equip. Co. v. Caterpillar Inc.*, 908 F.2d 60, 62-64 (6th Cir.1990) (finding that IFDA did not apply to Ohio franchisee despite contractual choice-of-law provision); *In re Montgomery Ward Catalog Sales Litigation*, 680 F. Supp. 182, 186 (E.D.Pa.1987) (finding IFDA not applicable to non-Illinois franchisee). *See also, Hoff Supply Co. v. Allen- Bradley Co., Inc.*, 750 F. Supp. 176 (M.D.Pa.1990) (limiting the application of Wisconsin Fair Dealership Law); *Premier Wine & Spirits v. E. & J. Gallo Winery*, 644 F. Supp. 1431, 1439 (E.D.Cal.1986) (limiting the application of the California Franchise Relations Act), aff'd, 846 F.2d 537, 540 (9th Cir.1988).

This proposed Affirmative Defense also fails to provide any short and plain statement of the facts supporting its claim. Again, Tecumseh has provided little in way of support for the proposed Affirmative Defense and has failed to meet this Court's Order that it demonstrate that its preemption challenge to the IFDA is not futile.

State law can be preempted either entirely or to the extent that it conflicts with federal law. A conflict between state and federal law arises when "compliance with both federal and state regulations is a *physical impossibility*... or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713 (1985) (citations omitted, emphasis added). *See also, Jones v. Rath Paking Co.*, 430 U.S. 519, 525-26 (1977).

Tecumseh's preemption argument is based solely on general principles. It does not cite a single case from any jurisdiction that has found a state's franchise laws preempted by federal law. (Def.'s Supp. Mem. at 6-9).[3] Tecumseh acknowledges that it cannot claim that the IFDA is expressly preempted by FTC regulations or that Congress has intended to occupy the field of franchise law so that state franchise laws are voided. (Def.'s Supp. Mem. at 6, n.4.) Instead, Tecumseh argues that the IFDA and the FTC regulations are in conflict to the extent the IFDA applies extraterritorially. (*Id.*)

Review of the FTC Act and the FTC regulations fails to disclose any such "conflict." Although Tecumseh does not expressly cite any particular "FTC regulation," it appears that 16 C.F.R. § 436.1 (commonly referred to as "the Franchise Rule") is the only regulation to which Tecumseh could be referring. But, as Zimmerman correctly notes, the Franchise Rule involves

---

[3] The only cases addressing federal preemption of the IFDA involve the Petroleum Marketing Practices Act, which is not involved here. *See, Shell Oil Co. v. Avar Corp.*, No. 97 C 4479, 1997 WL 779054, at *4 (N.D.Ill. Dec. 12, 1997); *Atlantic Richfield Co. v. Albert Brown*, No. 85 C 5131, 1985 WL 3316 (N.D.Ill. Oct. 21, 1985).

*disclosure* regulations. (Pl.'s Supp. Obj. at 16). The Franchise Rule does not regulate the relationship between the parties once they move beyond the initial disclosure phase. Compliance with both the FTC regulations and the IFDA would not be a "physical impossibility."

Although Tecumseh argues that the IFDA "is in *actual conflict* with the FTC regulations defining franchise relationships and the duties owed by franchisors to franchisees," (Def.'s Supp. Mem. at 6, emphasis added), Tecumseh's objection is not to *conflicting* requirements. Rather, Tecumseh objects because the IFDA imposes a limitation on the ability of the franchisor to terminate a franchisee, a limitation that is not found in the FTC regulations. (Def.'s Supp. Mem. at 7.) Tecumseh argues that the IFDA imposes additional duties that negatively impact interstate commerce beyond those found in the FTC regulations, and thus "disrupt[s] the FTC's regulatory scheme." *(Id.)* Tecumseh argues that this is contrary to the "implied preemptive intent" of the FTC Act, and further argues that *Geier v. American Honda Motor Co., Inc.*, ___U.S.___, 120 S. Ct 1913 (2000) supports its position that state laws contrary to "implied preemptive intent" of Congress FTC IFDA are not preserved by a savings provision, such as found in the FTC Act.[4] However, *Geier* does not support Tecumseh here.

In *Geier*, the Supreme Court considered whether state law tort liability premised on the plaintiff's claim that Honda had a duty to install an airbag when it manufactured the 1987 Honda Accord was preempted by National Traffic and Motor Vehicle Safety Act. Over a dissent in which four Justices joined, the majority of the Court found that such liability was preempted because it would be in actual conflict with the Federal Motor Vehicle Safety Standard 208 issued by the Department of Transportation, which rejected an "all airbag" standard. 120 S.Ct. at 1924. The Court held that the savings provision in the National Traffic and Motor Vehicle Safety Act did not

---

[4] The FTC Act provides (in 15 U.S.C. §57b), "Remedies provided in this section are in addition to and not in lieu of, any other remedy or right of action provided by State or Federal law."

7

"foreclose – the possibility that a federal safety standard will pre-empt a state common-law tort action *with which it conflicts*." 120 S. Ct. at 1919, emphasis added.

Tecumseh's Affirmative Defense 9 fails to identify any way in which the IFDA conflicts with the FTC Act or regulations or any way in which enforcing the IFDA would disrupt the FTC's regulatory scheme. Tecumseh has failed to demonstrate that its proposed Affirmative Defense 9 would not be futile. Leave to file proposed Affirmative Defense 9 is denied.

Proposed Affirmative Defense 10 – Good Cause

Tecumseh's proposed Affirmative Defense 10 states:

Tecumseh had good cause to terminate plaintiff including but not limited to plaintiff's failure to maintain an adequate force of salesmen to properly service its territory, for failing to cure this deficiency after receiving notice thereof and for repeatedly failing to comply with this requirement of the agreement between the parties.

Zimmerman's Complaint alleges that Tecumseh based its termination of Industrial on Section (d)(2) of their agreement, which is an "at will" termination provision. (Complaint ¶7 and Exhibit B to the Complaint.) However, Zimmerman claims that Section (d)(2) of the contract is void because it is contrary to the IFDA which prohibits the termination of any franchise prior to the expiration of its term except for "good cause." 815 ILCS 705/19. Now, in proposed Affirmative Defense 10, Tecumseh claims that it *had* "good cause" to terminate.

In the November 29, 2000 Order, this Court expressed concerns with respect to Affirmative Defense 10. Specifically, this Court indicated that Tecumseh, in its original answer and in its proposed amended answer, did not allege Zimmerman's failure to perform conditions in its contract "with particularity" as required by Fed.R.Civ.P. 9(c), and that Tecumseh had cited to no authority supporting its position that it can retroactively claim "good cause" as the basis for the termination and avoid violating the IFDA. Furthermore, this Court questioned, at the status hearing of

November 28, 2000, whether the doctrine of "mend-the-hold" could apply to prevent Tecumseh from pleading Affirmative Defense 10.

In response, Tecumseh states that it recently learned through discovery that it *would have had* "good cause" to terminate Industrial, but that the facts had been concealed by Zimmerman. (Def.'s Supp. Mem. at 10-11.) Tecumseh argues that this is sufficient to avoid the mend-the-hold doctrine under *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357 (7th Cir. 1990). In *Harbor Ins.*, the Seventh Circuit noted that the doctrine of mend-the-hold had been applied by Illinois courts in breach of contract actions "as a doctrine that estops a contract party to change the ground on which he has refused to perform the contract. . . ." 922 F.2d at 364. It is part of the good faith obligation implied in every contract. 922 F.2d at 363. The court concluded that parties to a contract

> were not allowed to change the defense to liability presented in their original pleading unless the change was based on new information that could not have been obtained at the time of that pleading or on other changed circumstances to which the companies could properly respond without being deemed to violate their duty of dealing in good faith with their contractual partner. . .

*Harbor Ins.*, 922 F.2d at 365.

Thus, avoiding the mend-the-hold doctrine depends on Tecumseh's ability to plead and prove that the information on which it now relies could not have been obtained at the time that the termination letter. Tecumseh's Affirmative Defense 10 is insufficient because it does not allege this essential element. Tecumseh's Affirmative Defense 10 as it is now pleaded is futile because it is contrary to the "mend-the-hold" doctrine, and leave to file that proposed Affirmative Defense as currently pleaded must be denied.

While it is not necessary to the decision on the present motion, it should be noted that it is not clear that after-acquired evidence is sufficient to avoid the IFDA where the franchisor did not base the termination on "good cause" at the time the notice of termination was sent. On this issue Tecumseh states that the "critical point is that defendant has only now learned of this <u>additional</u>

9

reason to terminate plaintiff under the IFDA because this good cause was previously concealed from defendant by plaintiff." (Def.'s Supp. Mem. at 11, emphasis in original). However, in order to have an <u>additional</u> reason, there must have been an initial reason from the start. The Complaint alleges that the termination letter sent by Tecumseh to Industrial stated that the Agreement was being terminated pursuant to a clause in the Agreement that allows for termination without cause upon thirty days written notice. (Complaint ¶ 7.) Tecumseh's Amended Answer effectively admits this allegation. (Amended Answer ¶7.)[5] At the time that it sent the termination letter, Tecumseh stated no reason, no "good cause" at all, for the termination.

The cases upon which Tecumseh relies on in making its "good cause" argument are distinguishable because in each case the franchisor originally stated that the termination was "for cause." Tecumseh points to *David Glen, Inc. v. SAAB Cars USA, Inc.*, 837 F. Supp. 888 (N.D.Ill. 1993), in which the franchisor terminated the franchisee due to the franchisee's cover-up of a fraudulent repair scheme orchestrated by one of the franchisee's mechanics. Subsequently, the franchisor discovered additional evidence of wrongdoing by the franchisee including the submission of false sales reports and the submission of phony warranty claims to the franchisor for reimbursement. 837 F.Supp at 889. Likewise, in *C.C.S. Chicago Recreation, Inc. v. American Suzuki Motor Corp.*, No. 90 C 2171, 1996 WL 99906 (N.D. Ill. March 1, 1996), the franchisor's termination notice was "tersely worded" but paralleled the termination for cause provision of the agreement (1996 WL 99906, at *5), and the court considered other reasons not "initially identified by the franchisor" in determining whether good cause existed. (*Id.*)

---

[5] Tecumseh answered that it "neither admits nor denies the allegations relating to the contents of the letter because the document speaks for itself." (First Amended Answer, ¶7.) The effect of the failure to deny an allegation in a pleading to which a responsive pleading is required, other than those as to the amount of damages, is an admission. Fed. R. Civ. P. 8(d).

Neither party has cited a case in which the court has considered the issue as presented by Tecumseh in its Supplemental Memorandum: Whether a franchisor who initially terminated a franchisee pursuant to a provision in the agreement that permits termination without cause may defend a claim under the IFDA on the ground that the franchisor had good cause for termination that was concealed by the franchisee.

Because Tecumseh has not, in fact, proposed such an Affirmative Defense, it would be premature to decide whether such a defense is available. Accordingly, leave to file Tecumseh's proposed Affirmative Defense 10 as currently pleaded is denied without prejudice to a subsequent motion by Tecumseh for leave to file an Affirmative Defense that sets out the elements of the purported "good cause" defense.

This Order, along with the Order of November 29, 2000, resolves all issues on Defendant's Motion for Leave to File First Amended Answer, Affirmative Defenses and Counterclaim. [DKT #31.]

**IT IS SO ORDERED.**

Geraldine Soat Brown
**Geraldine Soat Brown**
**United States Magistrate Judge**

**DATED: February 15, 2001**

11