Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5437 | **DATE** | 10/30/2001 |
| **CASE TITLE** | H.R.R. Zimmerman Co. vs. Tecumseh Products Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____.   Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■    [Other docket entry]    Enter memorandum opinion and order.  For the reasons stated in memorandum opinion and order, Defendant Tecumseh Products Co.'s motion for leave to file additional affirmative defenses [65-1] is denied as to all but proposed affirmative defense 18, as to which it  is granted in part and denied in part. Affirmative defense 18, which is limited to the matter as stated in memorandum opinion and order, shall be filed on or before 10 days following the entry of this order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

number of notices

NOV 0 2 2001

date docketed

docketing deputy initials

10/30/2001

date mailed notice

mm

courtroom deputy's initials

01 NOV -2  AM 7: 40

Date/time received in central Clerk's Office

mailing deputy initials

**Document Number**

93

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
NOV 0 2 2001

| | | |
|---|---|---|
| H.R.R. ZIMMERMAN CO., **Plaintiff,** | ) ) ) | Cause No. 99 C 5437 |
| | ) | |
| v. | ) ) | Judge Ronald A. Guzman Magistrate Judge Geraldine Soat Brown |
| TECUMSEH PRODUCTS CO. **Defendant.** | ) ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Defendant Tecumseh Products Co. ("Tecumseh") has filed a Motion for Leave to File Additional Affirmative Defenses. [Dkt # 65.] For the reasons set forth below, Tecumseh's motion is DENIED as to all but proposed Affirmative Defense 18, as to which it is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff H.R.R. Zimmerman Co. ("Zimmerman") filed this lawsuit in August 1999 alleging that Tecumseh wrongfully terminated Industrial Engine and Parts ("Industrial Engine"), an operating division of Zimmerman, as a distributor of Tecumseh's small engine equipment.[1] Industrial Engine

---

[1] Although Zimmerman is the plaintiff, in its Complaint it refers to the plaintiff as "Industrial Engine." In Tecumseh's proposed Affirmative Defenses, it is referred to as "HRRZ." (Def.'s Prop. Add'l Aff. Defenses [Dkt # 65].) Judge Guzman, in his March 2001 Memorandum Opinion and Order referred to the plaintiff as "Industrial Engine." *H.R.R. Zimmerman Co. v. Tecumseh Products, Co.*, 2001 WL 289867 (N.D. Ill. Mar. 15, 2001)(Guzman, J.). This opinion will do so also.

1

alleged that the termination was without good cause, in violation of the Illinois Franchise Disclosure Act (815 Ill. Comp. Stat. § 705/1 *et seq.*) ("IFDA"). Industrial Engine also alleged that the termination breached a 1988 written distributor agreement, the Central Warehouse Distribution Agreement ("Agreement"), between Industrial Engine and Tecumseh. [Dkt # 1.][2]

Tecumseh sought leave in July 2000 to file an amended answer including six new affirmative defenses and a counterclaim. [Dkt # 31.] This Court granted leave to file the amended answer, counterclaim, and three of the proposed additional affirmative defenses. *H.R.R. Zimmerman Co. v. Tecumseh Products Co.*, 2000 WL 1760821 (N.D. Ill. Nov. 30, 2000). [Dkt # 50.] However, after allowing further briefing Tecumseh was denied leave to file proposed affirmative defenses that application of the IFDA would violate the Commerce Clause of the United States Constitution and that the IFDA is preempted by the Federal Trade Commission Act. Tecumseh was also denied without prejudice leave to file a proposed affirmative defense that Tecumseh had good cause to terminate Industrial Engine. The opinion noted that Tecumseh had failed to cite authority to support its theory that facts Tecumseh only learned after it terminated Industrial Engine could be asserted as good cause for the termination. *H.R.R. Zimmerman Co. v. Tecumseh Products Co.*, 2001 WL 184982, *6-7 (N.D. Ill. Feb. 22, 2001). [Dkt # 61.]

Subsequently the District Judge granted in part and denied in part Tecumseh's motion for summary judgment, granting summary judgment for Tecumseh on Industrial Engine's common law breach of contract claim but denying summary judgment on the IFDA claim. *H.R.R. Zimmerman Co. v. Tecumseh Products Co.*, 2001 WL 289867 (N.D. Ill. Mar. 15, 2001)(Guzman, J.).

---

[2]  This matter has been referred to the Magistrate Judge for Order or Report and Recommendation on all non-dispositive pretrial motions. [Dkt # 45.]

Tecumseh's present motion seeks leave to file eight additional affirmative defenses. Tecumseh's proposed additional affirmative defenses are, as numbered by Tecumseh: 11) the scope of the IFDA bars Industrial Engine's claim for damages for lost sales to customers outside Illinois; 12) the Commerce Clause bars recovery of damages for sales to direct or indirect customers in states other than Illinois; 13) Tecumseh had good cause to terminate Industrial Engine which Tecumseh did not learn until after the filing of this lawsuit; 14) Industrial Engine is estopped from denying that Tecumseh had good cause to terminate Industrial Engine; 15) the IFDA did not provide for a private cause of action for wrongful termination in 1988 when Tecumseh and Industrial Engine entered into the Agreement; 16) Section 19(a) of the IFDA, on which Industrial Engine bases its claim, does not apply because the Agreement was terminable at will; 17) the absence of a fixed duration in the Agreement makes the agreement subject to Section 20 of the IFDA; and 18) the Illinois Equipment Fair Dealership Law ("IEFDL")(815 Ill. Comp. Stat. § 715/1 *et seq.*) excludes Industrial Engine from bringing a claim under the IFDA, or, alternatively, limits Industrial Engine to prospective damages under the IEFDL for no more than nine months' lost profits. (Def.'s Prop. Add'l Aff. Defenses [Dkt # 65].)

Tecumseh comments that it believes that some of these affirmative defenses may also be asserted by a motion in limine to exclude evidence of certain lost profits (proposed defenses 11, 12, 17 and 18), or by a motion to dismiss for lack of subject matter jurisdiction (proposed defenses 17 and 18). (Def.'s Mem. Supp. Mot. at 1, n. 1 [Dkt # 66].) Tecumseh states that it nevertheless presents these matters as affirmative defenses "to err on the side of caution." (*Id.*)

## LEGAL STANDARD

Affirmative defenses are pleadings, and therefore are subject to all pleading requirements

of the Federal Rules of Civil Procedure. *Zimmerman,* 2001 WL 184982, *2, citing *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989). *See also Renalds v. S.R.G. Restaurant Group,* 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000)(Alesia, J.). This district applies a three-part test in evaluating an affirmative defense: 1) the matter must be properly pleaded as an affirmative defense; 2) the matter must be adequately pleaded under Rules 8 and 9; and 3) the matter must withstand a Rule 12(b)(6) challenge. *Renalds,* 119 F. Supp 2d at 802. Rule 15(a) allows pleadings to be amended freely when justice so requires. *Id.* at 803.

Fed. R. Civ. P. 8(c) sets out a list of 19 matters that should be pleaded as affirmative defenses, concluding with a catch-all reference to "any other matter constituting an avoidance or affirmative defense." The affirmative defense concept in federal pleading rules essentially codifies the common law plea in confession and avoidance. *Gwin v. Curry,* 161 F.R.D. 70, 71 (N.D. Ill. 1995)(Shadur, J.). The defendant treats the factual allegations of the complaint as true, but then goes on to assert new matter that eliminates or limits the defendant's liability arising from those allegations. *Id.* An affirmative defense that merely reasserts a matter already placed in issue by the defendant's denial of allegations in its answer is "not justified . . . out of some super abundance of caution." *Id.* at 72, n. 1. *See also Renalds,* 119 F. Supp. 2d at 802 ("[C]ourts should strike affirmative defenses that are clearly . . . redundant, for example if they raise matters already raised in the defendant's denial.")

***Proposed Affirmative Defense 11: Limitation of damages under the IFDA.***

In this proposed affirmative defense, Tecumseh seeks to plead that the IFDA does not permit all of the damages that Industrial Engine claims, because, Tecumseh states, the IFDA does not apply

to sales to customers in states other than Illinois. This proposed affirmative defense is redundant of Tecumseh's denial of Paragraph 14 of the Complaint. In that paragraph, Industrial Engine alleged that, as a result of Tecumseh's alleged violation of the IFDA, Industrial Engine suffered damages in excess of $75,000. Tecumseh denied the allegations of Paragraph 14. If liability is proven, the scope of Industrial Engine's recoverable damages under the IFDA is already at issue in the pleadings. This is in contrast to cases such as *Ingraham v. United States*, 808 F.2d 1075 (5th Cir. 1987), where the plaintiff seeks recovery under a common law theory, and the defendant seeks to assert a statutory limitation to the amount of damages. In that situation, the statutory limitation must be asserted as an affirmative defense. *Id.* at 1079. In this case, the defendant's asserted limitation is an argument about the scope of the plaintiff's asserted statutory basis for recovery.

As discussed above, Tecumseh states that it will bring this issue as a motion in limine. The text of Tecumseh's proposed affirmative defense, which is more of an argument than a short and plain statement of facts, suggests that is the appropriate course. Leave to file proposed Affirmative Defense 11 is denied because it is redundant of Tecumseh's denials.

### Proposed Affirmative Defense 12: The Commerce Clause.

The February 22, 2001 ruling rejected Tecumseh's original proposed assertion of the Commerce Clause as an affirmative defense because Tecumseh sought to justify the defense on the speculation that the IFDA might conflict with franchise laws of other states and therefore might subject Tecumseh to "inconsistent regulations" of different states. *Zimmerman*, 2001 WL 184982, *2. Tecumseh had failed to allege any facts to show how Tecumseh could be subject to such "inconsistent regulations."

Tecumseh's proposed Affirmative Defense 12 does not remedy the deficiencies of its previous proposed defense. Tecumseh is not alleging that Industrial Engine in fact operated distributorships in states other than Illinois during the time preceding its termination. Tecumseh's proposed Affirmative Defense is apparently based on Tecumseh's interpretation of Industrial Engine's damage claim. Tecumseh alleges that Industrial Engine's damage claim is based on the assumption that, had Industrial Engine not been terminated by Tecumseh, Industrial Engine would have terminated its relationships with some or all of its lower tier wholesalers outside Illinois, and would have made sales directly to customers of these lower tier wholesalers, and that in order to do so Industrial Engine would have had to locate its own facilities in unnamed "Other States" outside of Illinois. (Def.'s Prop. Add'l Aff. Defenses at 1-2.) It is not clear from either the proposed Affirmative Defense or Tecumseh's Memorandum whether these hypothetical facilities outside of Illinois are part of Industrial Engine's damage scenario or whether it is Tecumseh's conclusion that those facilities would have been needed. In any event, Tecumseh argues that to award damages under the IFDA based on the sales from these hypothetical facilities outside of Illinois would violate the Commerce Clause as interpreted in *Morley-Murphy Co. v. Zenith Electronics Corp.*, 142 F.3d 373 (7th Cir. 1998). Again, this hypothetical conflict with the Commerce Clause is not an appropriate affirmative defense. At best it is an arguable limitation on the scope of damages that can be awarded under the IFDA. Tecumseh's argument is more appropriately raised as a motion for partial summary judgment or a motion in limine. Leave to file proposed Affirmative Defense 12 is denied.

***Proposed Affirmative Defense 13: Good cause in accordance with Section 19 of the IFDA.***

In its Answer to the Complaint, Tecumseh denied the second sentence of Paragraph 13 of the

6

Complaint, which alleged that Tecumseh violated the IFDA by terminating Industrial Engine's franchise without good cause. However, as noted in the February 22, 2001 decision, Tecumseh has effectively admitted that the termination letter stated that the Agreement was being terminated pursuant to a clause in the Agreement that allows for termination without cause. *Zimmerman*, 2001 WL 184982, *6. Tecumseh's proposed Affirmative Defense 13 seeks to plead that, since the filing of the lawsuit, Tecumseh has discovered that Industrial Engine repeatedly failed to comply with a provision of the Agreement requiring Industrial Engine to maintain an adequate force of salesman to properly service its territory, and made misrepresentations to Tecumseh to hide its non-compliance. Thus, Tecumseh pleads, it had good cause to terminate Industrial Engine pursuant to Section 19(b) of the IFDA.[3]

The February 22, 2001 ruling denying without prejudice the filing of Tecumseh's then-proposed "good cause" affirmative defense cited the mend-the-hold doctrine discussed in *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357 (7th Cir. 1990). That doctrine estops a party from

---

[3] That section provides (in relevant part):

§ 19. Termination of a Franchise. (a) It shall be a violation of this Act for a franchisor to terminate a franchise of a franchised business located in this State prior to the expiration of its term except for "good cause" as provided in subsection (b) or (c) of this Section.

(b) "Good cause" shall include, but not be limited to, the failure of the franchisee to comply with any lawful provisions of the franchise or other agreement and to cure such default after being given notice thereof and a reasonable opportunity to cure such default, which in no event need be more than 30 days.

(c) "Good cause" shall include, but without the requirement of notice and an opportunity to cure, situations in which the franchisee: . . . .

(4) repeatedly fails to comply with the lawful provisions of the franchise or other agreement.

changing the ground on which it has refused to perform a contract. 922 F.2d at 364. This Court stated that to avoid the mend-the-hold doctrine, Tecumseh would have to plead and prove that the basis on which it now relies could not have been obtained at the time that Tecumseh sent the termination letter. *Zimmerman,* 2001 WL 184982, *6, citing *Harbor Ins.*, 922 F.2d at 365.

Tecumseh's current proposed Affirmative Defense 13 alleges that in 1998 its regional sales manager advised Andy Zimmerman, Industrial Engine's general manager, that Tecumseh was "concerned" that Industrial Engine's staffing was insufficient, and that on February 2, 1999, Tecumseh advised Andy Zimmerman that Industrial Engine did not have enough field support and that Andy Zimmerman was overextended. (Def.'s Prop. Add'l Aff. Defenses at 2.) Tecumseh claims that Industrial Engine responded to the February 2, 1999 advice by falsely representing that two Industrial Engine employees were devoting their time to managing the division that sold Tecumseh's products. Tecumseh claims that it did not learn that the representation was false until it took the depositions of Industrial Engine representatives during the course of this lawsuit. (*Id.* at 2-3.) Tecumseh states that these allegations establish that its termination of Industrial Engine complied with Section 19 of the IFDA because Industrial Engine did not cure its failure to maintain an adequate work force even after notice, and that Industrial Engine made misrepresentations to Tecumseh to hide its non-compliance.

There are a number of problems with Tecumseh's proposed Affirmative Defense 13, even assuming, *arguendo*, that Tecumseh's allegations of false representation by Industrial Engine are sufficient to satisfy the common law principle of "mend the hold." The February 22, 2001 ruling also stated that Tecumseh had failed to cite any authority to support its position that a franchisor who terminated a franchisee without cause can defend a claim under the IFDA on the ground that the

franchisor had good cause for termination that was concealed by the franchisee. *Zimmerman*, 2001 WL 184982, *6. Tecumseh has failed to supply any authority on this point.

Furthermore, even assuming that in a proper case a franchisor who had terminated the franchisee without cause could defend on the ground that it had good cause that was deliberately concealed by the franchisee, and accepting Tecumseh's factual allegations as true for purposes of considering the sufficiency of proposed Affirmative Defense 13, Tecumseh's proposed Affirmative Defense 13 does not set out "good cause" as defined by the IFDA.

Under that statute, "good cause" is established by two circumstances. The first is "the failure of the franchisee to comply with any lawful provisions of the franchise or other agreement and *to cure such default after being given notice thereof* and a reasonable opportunity to cure such default. . . ." IFDA, § 19(b), emphasis added. The clear directive of this section is that the franchisor must advise the franchisee that the franchisee is "in default" and at risk of losing its franchise if it does not "cure such default" within a specified time. Nothing in proposed Affirmative Defense 13 suggests that this type of notice was provided to Industrial Engine or that Industrial Engine was given a specified time to cure. The second circumstance, which does not require notice or opportunity to cure, occurs when the franchisee "repeatedly fails to comply with the lawful provisions of the franchise or other agreement." IFDA § 19(c)(4). Applying Subsection(c)(4) here would make Subsection (b) meaningless. In this case, the alleged failure to comply concerns a provision that obligates Industrial Engine to "exercise its best efforts in the promotion and sale of the [equipment] and to maintain and travel an adequate force of Salesmen to properly service its territory." (Agreement ¶ b-1, quoted in proposed Affirmative Defense 13.) Although Tecumseh alleges that Industrial Engine "repeatedly failed to comply" with this provision, Industrial Engine's failure to

comply was not so significant as to have caused Tecumseh to express more than "concern" in 1998. (Def.'s Prop. Add'l Aff. Defenses at 2-3.) Tecumseh pleads that two employees that Tecumseh was told in 1999 were working on Tecumseh's products were not, in fact, working on Tecumseh's products. The absence of those two persons if known to Tecumseh would not have justified terminating Industrial Engine pursuant to Subsection (c)(4) without an opportunity to cure. *Compare Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.,* 970 F.2d 273 (7th Cir. 1992)(franchisee's repeated failure to furnish insurance certificates, late payment of invoices, repeated bounced checks, failing inspections, and underreporting sales justified termination under IFDA § 19(c)(4)). Likewise, Tecumseh has alleged only one event that it claims constitutes a misrepresentation, the response by Andy Zimmerman in February 1999 that the two employees were working on Tecumseh's products. These facts do not demonstrate "good cause" so as to justify termination under IFDA § 19(c)(4). Leave to file Affirmative Defense 13 is denied.

### *Proposed Affirmative Defense 14: Equitable Estoppel.*

Tecumseh's proposed Affirmative Defense 14 asserts that Zimmerman is estopped from denying Tecumseh had good cause to terminate Industrial Engine. Leave to file a proposed affirmative defense must be denied where, under the standards applicable to Rule 12(b)(6), it appears beyond a doubt the defendant can prove no set of facts to support its defense. *Renalds,* 119 F. Supp. 2d at 803 (citing cases).

To state a defense of estoppel, Tecumseh must plead: 1) that Industrial Engine took some course of action, 2) on which Tecumseh reasonably relied, 3) causing Tecumseh to change its position for the worse. *Bobbitt v. Victorian House, Inc.,* 532 F. Supp. 734, 738 (N.D. Ill.

1982)(Shadur, J.). In proposed Affirmative Defense 13, Tecumseh pleads that it terminated Zimmerman for an undisclosed "sound business reason" (Def.'s Prop. Add'l Aff. Defenses at 3), and, as discussed *above,* Tecumseh has admitted that its termination letter dated February 23, 1999 cited the provision of the Agreement providing for termination without cause. In proposed Affirmative Defense 14, Tecumseh alleges that it relied on Andy Zimmerman's representations (about the two employees) on February 2, 1999 in terminating Industrial Engine for [Tecumseh's] business reasons, and that, had Tecumseh known that the representations were false, Tecumseh would also have terminated the Agreement for cause. (*Id.* at 4.)

Tecumseh is not alleging it would have decided not to terminate Industrial Engine on February 23, 1999, but only that its letter would have cited the additional reasons of failure to provide adequate staffing and the misrepresentation about the two employees as giving cause. Tecumseh apparently characterizes its failure to add these "good cause" reasons to the February 23, 1999 termination letter as "a change for the worse" because it gave Industrial Engine an opportunity to claim that its termination was wrongful under the IFDA.

However, as discussed *above,* Tecumseh's allegations do not show a basis for terminating without notice pursuant to IFDA § 19(c)(4). Thus, had Tecumseh known the truth (that the two employees were not working on Tecumseh's products or that Andy Zimmerman misrepresented that they were so working), simply adding that to the February 23, 1999 letter would not have provided a basis for defending against the claim under the IFDA. The course that would have complied with the IFDA would have been to provide notice of default and an opportunity to cure under Section 19(b). Tecumseh does not say that it would have provided that notice or that it would have delayed terminating Industrial Engine to allow it an opportunity to cure. Thus, even if Tecumseh believed

11

Andy Zimmerman's representations on February 2, 1999, and even if those representations were false, Tecumseh did not materially alter its position for the worse in reliance upon them.

Accordingly, Tecumseh has not shown that there are any facts that it could prove under its proposed Affirmative Defense 14 that would constitute a defense to Industrial Engine's claim.[4] Leave to file Affirmative Defense 14 is denied.

### *Proposed Affirmative Defense 15: No private right of action.*

Tecumseh's proposed Affirmative Defense 15 asserts that the version of the IFDA in force in 1988 when Tecumseh and Industrial Engine entered into their Agreement did not provide a right for a franchisee to bring a private civil action for wrongful termination. (Def.'s Prop. Add'l Aff. Defenses at 4.) Tecumseh's argument is simply contrary to the history of the IFDA.

The IFDA was enacted effective January 1, 1974. Ill. Rev. Stat. (1975) ch. 121½, § 701 *et seq.* It was amended in 1979 (Ill. Rev. Stat. (1979) ch. 121½, § 701 *et seq.*) and amended again in 1987. Ill. Rev. Stat. (1987) ch. 121½, § 1701 *et seq.* It was amended again and recodified in 1992 as 815 Ill. Comp. Stat. § 705/1 *et seq.* The original 1974 statute focused on the disclosures a franchisor was required to make to a prospective franchisee. However, the 1979 amendment introduced various prohibitions relating to a franchisor's operating relationship with a franchisee, including a prohibition against termination of that relationship without "good cause." Ill. Rev. Stat. (1979) ch. 121½, § 704.3 Each succeeding emanation of the statute reiterated this "good cause" provision. Ill. Rev. Stat. (1987) ch. 121½, § 1719; 815 Ill. Comp. Stat. § 705/19.

---

[4] This, of course, does not constitute a ruling that evidence about Andy Zimmerman's February 1999 statements about the two employees cannot be admitted for some other purpose, for example, in connection with Industrial Engine's damage claim. Such decisions about the admissibility of evidence are for the trial judge.

Prior to the 1987 amendment, the statute included a section entitled "Private civil actions" that gave a franchisee the right to bring an action against a franchisor to recover damages "for violation of this Act." Ill. Rev. Stat. (1979) ch. 121½, § 721. In the 1987 amendment, this provision was reworded. The section entitled "Private civil actions" referred to a franchisee's right to sue for damages against "[a]ny person who offers or sells a franchise in violation of this Act." Ill. Rev. Stat. (1987) ch. 121½, § 1726. In 1992, the section entitled "Private civil actions" was again reworded to state that the franchisee had a right to sue for damages against "[a]ny person who offers, sells, terminates, or fails to renew a franchise in violation of this Act." The amendment further stated: "This amendatory Act of 1992 is intended *to clarify the existence of a private right of action under existing law* with respect to the termination or nonrenewal of a franchise in violation of this Act." 815 Ill. Comp. Stat. § 705/26, emphasis added.

Tecumseh contends the 1987 amendment intended to provide no private civil action for wrongful termination. (Def.'s Mem. at 9.) Tecumseh notes that the 1979 amendment, which introduced the right of a franchisee to sue for wrongful termination, contains a provision that franchise agreements "where there is no interruption in the operation of the franchise business by the franchisee" are "exempt from the provisions of Section 4." (Def.'s Reply to Pl.'s Resp. to Tecumseh's Mot. for Leave To File Add'l Aff. Defenses ("Def.'s Reply") at 3, citing Ill. Rev. Stat. (1979) ch. 121½, § 717(2).) Tecumseh argues that, accordingly, neither the 1979 nor the 1987 version of the IFDA provided a franchisee the right to sue for wrongful termination. (*Id.*) Tecumseh further contends that the 1992 amendment cannot be applied retroactively, because to do so would impair Tecumseh's contract rights in violation of Article I, § 10 of the United States Constitution. (*Id.* at 2.)

Tecumseh's arguments are not persuasive. Section 717 of the statute as amended in 1979 provided that "[t]he extension or renewal of an existing franchise or the exchange or substitution of a modified or amended franchise agreement is exempt from the requirements of Section 4." Section 4 (codified at Section 704) required that a franchisor be licensed with the state of Illinois at the time it enters an agreement with a franchisee, and that the franchisor must provide a disclosure statement prior to selling a franchise. Ill. Rev. Stat. (1979) ch. 121½, §§ 704, 717. The exemption in Section 717 plainly does not apply here. Furthermore, the prohibition against termination without "good cause" was not contained in Section 4, but rather in Section 4.1 of the 1979 amendment, codified at Ill. Rev. Stat. (1979) ch. 121½, § 704.3.

Industrial Engine cites *Commonwealth Edison Co. v. Will County Collector*, 749 N.E.2d 964 (Ill. 2001), in which the Illinois Supreme Court adopted the reasoning of the United States Supreme Court's decision in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). The Illinois Supreme Court stated:

> Under the *Landgraf* test, if the legislature has clearly indicated what the temporal reach of an amended statute should be, then, absent a constitutional prohibition, that expression of legislative intent must be given effect. However, when the legislature has not indicated what the reach of a statute should be, then the court must determine whether applying the statute would have a retroactive impact, *i.e.*, "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. If there would be no retroactive impact, as that term is defined by the court, then the amended law may be applied. *Landgraf*, 511 U.S. at 273-74, 275. If, however, applying the amended version of the law would have a retroactive impact, then the court must presume that the legislature did not intend that it be so applied. *Landgraf*, 511 U.S. at 280.

*Commonwealth Edison*, 749 N.E.2d at 971-72.

Applying the reasoning of *Commonwealth Edison* here, the IFDA provides Industrial Engine

a private cause of action for alleged wrongful termination of the 1988 Agreement. The 1992 amendment specifically stated the legislature's intention to "clarify the existence of a private right of action," not to create a new one. Even in 1988 when Tecumseh and Industrial Engine entered into the Agreement a franchisor was prohibited from terminating a franchise agreement without "good cause." As Industrial Engine points out (Pl.'s Surreply at 4-5), this conclusion is consistent with other decisions in this jurisdiction. *See, e.g., Dudley Enterprises, Inc. v. Palmer Corp.*, 822 F. Supp. 496, 504 (N.D. Ill. 1993)(Moran, J.), in which the court held that a private right of action existed for termination without cause even during the period between the 1987 amendment and the 1992 amendment.

Accordingly, Tecumseh's Proposed Affirmative Defense 15 misstates the law, and hence fails to state a defense. Leave to file that affirmative defense is denied.

### *Proposed Affirmative Defense 16: Section 19 of the IFDA does not apply to the Agreement.*

In its Answer, Tecumseh denied the allegations of Paragraph 9 of the Complaint that the relationship between Tecumseh and Industrial Engine was that of a franchise under the IFDA. (First Am. Ans., Aff. Defenses and Countercl. ¶9.) Tecumseh also denied the allegations of the second sentence of Paragraph 13, that Tecumseh violated the IFDA by terminating Industrial Engine's franchise without good cause. (*Id.* at ¶13.)

In proposed Affirmative Defense 16, Tecumseh asserts that Section 19 of the IFDA, the Section upon which Industrial Engine premises its Complaint, does not provide a remedy for Industrial Engine because that Section prohibits termination of a franchise "prior to expiration of its term" and the Agreement did not have a "term" in the sense of a specific period of duration. (Def.'s

Prop. Add'l Aff. Defenses at 4.) Industrial Engine strenuously denies the correctness of Tecumseh's legal analysis. (Pl.'s Resp. Tecumseh's Mot. Leave to File Add'l Aff. Defenses at 7-9 [Dkt # 72].) However, the correctness of Tecumseh's legal argument need not be determined on this motion, because proposed Affirmative Defense 16 is essentially only an argument about a matter that is already at issue by Tecumseh's denial of Paragraphs 9 and 13, which denied Industrial Engine's right to recover under Section 19 of the IFDA. An affirmative defense has been described as "something that generally admits the matters in a complaint but suggests some other reason why there is no right of recovery." *Bobbitt*, 532 F. Supp. at 736 (citing 5 Wright and Miller, Federal Practice and Procedure § 1270 at 292). Leave to file proposed Affirmative Defense 16 is denied because it is not necessary to plead it as an affirmative defense; it is redundant in light of Tecumseh's denials.

### *Proposed Affirmative Defense 17: If the IFDA applies, Section 20, not Section 19, governs Tecumseh's termination of Industrial Engine.*

In proposed Affirmative Defense 17, Tecumseh asserts that, if the IFDA applies, the applicable section is Section 20, which requires the franchisor to send a notice of intent not to renew at least six months prior to the expiration date. Tecumseh asserts that, because the Agreement had no fixed term, it was "continuously renewed" and Tecumseh could have sent a notice of nonrenewal on February 23, 1999 without cause. Therefore, Tecumseh claims, Industrial Engine's damages cannot exceed compensation for more than 6 months. (Def.'s Prop. Add'l Aff. Defenses at 4.) Section 20 provides, in relevant part:

> 20. Nonrenewal of a franchise. It shall be a violation of this Act for a franchisor to refuse to renew a franchise of a franchised business located in this State without compensating the franchisee either by repurchase or by other means for the diminution in the value of the franchised business caused by the expiration of the franchise where: . . .

(b) the franchisee has not been sent notice of the franchisor's intent not to renew the franchise at least 6 months prior to the expiration.

Proposed Affirmative Defense 17, unlike proposed Affirmative Defense16, goes beyond Tecumseh's denial of Industrial Engine's right to recover as pleaded in the Complaint, and asserts a different statutory basis for defeating or limiting Industrial Engine's claim. Thus, it is necessary to determine whether proposed Affirmative Defense 17 may be filed, or as argued by Industrial Engine, leave to file should be denied because the proposed defense cannot survive a Rule 12(b)(6) challenge.

Tecumseh concedes that, as far as applying Section 20 to a contract with no fixed term, this is a case of first impression. (Def.'s Reply at 9.) The rule of statutory construction is to ascertain and give effect to the legislature's intention. *Lulay v. Lulay*, 739 N.E.2d 521, 527 (Ill. 2000). Illinois and federal courts agree that the court must initially look to the language of the statute, which must be given its plain and ordinary meaning if possible. *Lulay*, 739 N. E. 2d at 527; *Jones v. Hanley Dawson Cadillac Co.*, 848 F.2d 803, 806-07 (7th Cir.1988).

In support of its argument that the Agreement was "continuously renewing" and therefore subject to Section 20, Tecumseh cites *Dayton Heidelberg Distrib. Co. v. Vintners Internat'l Co. of New York*, No. C-3-87-436, 1991 WL 1119912 (S.D. Ohio 1991). The court in *Dayton Heidelberg* held that a franchise agreement with no fixed term was subject to a statute passed after the parties entered into the agreement because it was constantly renewed and therefore subject to any changes in the law. 1991 WL 1119912, *4-5. That case provides little support for the application of Section 20 here. The court in *Dayton Heidelberg* did not discuss nonrenewal in a context that anticipates an "expiration."

17

The text of Section 20 does not support a construction that the legislature intended it to apply to a franchise agreement without a fixed date for expiration.

Tecumseh's real argument for the application of Section 20 is that Industrial Engine's damage claim under Section 19 proceeds on the assumption that Tecumseh could never terminate Industrial Engine because there would never be good cause, "thereby permitting recovery of lost profits forever and resulting in *unequal* application of the IFDA when compared to its remedy for wrongful termination of a fixed term franchise." (Def.'s Reply at 10, emphasis in original.) Tecumseh's argument is more properly addressed to the appropriate scope of damages for a claim under Section 19, rather than trying to stretch Section 20 beyond its terms to avoid what Tecumseh argues is an unfair result. Leave to file proposed Affirmative Defense 17 is denied because it would be futile.

### *Proposed Affirmative Defense 18: Section 10.1 of the Illinois Equipment Fair Dealing Act.*

Tecumseh's proposed Affirmative Defense 18 asserts two defenses based on the following section of the Illinois Equipment Fair Dealing Act ("IEFDL"), 815 Ill. Comp. Stat. § 715.10.1:

> § 10.1 Retailers and others not subject to Franchise Disclosure Act of 1987. Retailers and wholesalers, manufacturers, and distributors of inventory are not subject to the provisions of the Franchise Disclosure Act of 1987.

Section 10.1 is an amendment to the IEFDL that became effective January 1, 2000. (The IEFDL itself became effective September 17, 1983. 815 Ill. Comp. Stat. § 715/1.)

In proposed Affirmative Defense 18, Tecumseh asserts in the alternative: a) that Section 10.1 of the IEFDL applies retroactively and therefore deprives Industrial Engine of its claimed cause of action under the IFDA; b) that if Section 10.1 of the IEFDL does not apply retroactively, nevertheless

18

it limits the period of time after Industrial Engine was terminated for which it can claim damages.

The alternative affirmative defense states:

> Alternatively, the amendment nevertheless conclusively demonstrates that [Industrial Engine's] assumption, for purposes of the computation of its damages, that its agreement with Tecumseh would last forever, is incorrect, because the CWD Agreement could have been terminated in accordance with the terms of Section 10.1 as of January 1, 2000, slightly more than 9 months after the actual date of termination, which was May 25, 1999.[5]

(Def.'s Prop. Add'l Aff. Defenses at 5.)

Where the defendant seeks to negate the plaintiff's claims by reference to statutory provisions that the plaintiff itself has not alleged as the basis for its claim, such a defense goes outside the scope of the *prima facie* case the plaintiff seeks to prove and qualifies as an appropriate matter to be asserted as an affirmative defense. *Evergreen Media Corp. v. Radio & Television Broadcast Engineers, Local Union No. 1220 of the Brotherhood of Electrical Workers*, 983 F. Supp. 731, 737 (N.D. Ill. 1997)(Aspen, J.).

Industrial Engine argues that leave to file Affirmative Defense 18 must be denied, first because the IEFDL does not apply to the Agreement, and secondly, if it does apply, Section 10.1 cannot be applied retroactively. (Pl.'s Resp. at 14-15.)

*A. Does Section 10.1 of the IEFDL apply to the relationship between Tecumseh and Industrial Engine?*

Industrial Engine argues that the merchandise involved in its relationship with Tecumseh cannot fit the definition of "inventory" contained in IEFDL § 715/2(2). That section provides:

> "Inventory" shall mean farm implements, farm machinery, attachments, accessories and repair parts, outdoor power equipment, construction equipment, industrial equipment, attachments, accessories and repair parts[.]

---

[5] Although this affirmative defense is drafted more as an argument than a pleading, the substance of the pleading will be considered.

Tecumseh's proposed Affirmative Defense 18 alleges that Industrial Engine is a wholesaler and distributor of inventory. Industrial Engine's Complaint ¶1 alleges, in part:

> Industrial Engine & Parts was at all times pertinent hereto a wholesale distributor of small engines, power train components and parts manufactured and/or supplied by Tecumseh Products Company for use in lawn mowers and snow blowers, among other things.

On a motion for leave to file an affirmative defense, as on a motion to dismiss under Rule 12(b)(6), the court does not decide questions of fact. The issue is whether it appears beyond doubt that the defendant can prove no set of facts in support of its defense which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Applying this standard, it cannot be said beyond doubt that Tecumseh cannot prove a set of facts that would bring its relationship with Industrial Engine within the definition of "inventory" and the scope of IEFDL § 10.1.

*B. Can Section 10.1 of the IEFDL apply to negate Industrial Engine's claim?*

Industrial Engine argues that Section 10.1 cannot apply retroactively to its claim against Tecumseh. However, as the Illinois Supreme Court stated in *Commonwealth Edison*, quoting the U.S. Supreme Court's *Landgraf* decision:

> The Court also observed: "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment [citation] or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. . . ."

*Commonwealth Edison*, 749 N.E.2d at 971-72, quoting *Landgraf*, 511 U.S. at 269-70.

To apply Section 10.1 to negate Industrial Engine's claim entirely would be to apply it retroactively, because the termination occurred in 1999, prior to the effective date of the section. The

first task is to determine whether the General Assembly has expressly indicated the temporal reach of the amendment; if so, absent a constitutional prohibition, that expression must be applied. *Commonwealth Edison,* 749 N.E.2d at 971. Unlike the 1992 amendment of the IFDA discussed regarding Affirmative Defense 15, IEFDL § 10.1 contains no express provision that suggests the temporal reach of the amendment. However, applying the reasoning of *Commonwealth Edison,* the amendment to the IEFDL should not be applied retroactively where doing so would eliminate a statutory claim that accrued prior to the effective date of amendment. Thus, IEFDL § 10.1 cannot be applied retroactively to assert an affirmative defense that Zimmerman cannot state any claim under the IFDA.

## C. Can Section 10.1 apply to limit Industrial Engine's claim for future damages?

Industrial Engine's argument against Tecumseh's alternative assertion in Affirmative Defense 18 assumes that to apply Section 10.1 to Industrial Engine's claim for future damages would likewise be to apply the statute retroactively. Industrial Engine cites no authority for that assumption, and it is not clear that the assumption is correct. Industrial Engine's damage claim is also based on an assumption: That Tecumseh would be legally required to continue the Agreement indefinitely or at least until Industrial Engine gave "good cause" for termination. (Def.'s Reply at 10.) Industrial Engine has provided no authority demonstrating that under these circumstances it has a vested interest in receiving a stream of income past 1999 from a relationship that (Tecumseh alleges) could have been legally terminated in January 2000.

Again, leave to file an affirmative defense can be denied if it fails to meet the standards of Rule 12(b)(6), but Rule 15(a) requires that leave to amend be freely given when justice so requires. It cannot be said that there is no set of facts that Tecumseh could prove that would entitle it to relief

under its alternative assertion that IEFDL § 10.1 cuts off Industrial Engine's claim for damages beyond January 1, 2000.

Accordingly, Tecumseh is given leave to file within 10 days following the entry of this Order a revised Affirmative Defense 18 that eliminates the assertion that IEFDL § 10.1 applies retroactively to bar Industrial Engine from making any claim under the IFDA, and states only its alternative assertion that the IEFDL amendment precludes a claim by Industrial Engine for damages relating to the period beyond January 1, 2000. Tecumseh is also directed to state its affirmative defense in the form appropriate as a pleading and not as an argument.

## CONCLUSION

For the foregoing reasons, Tecumseh's Motion for Leave to File Additional Affirmative Defenses is DENIED except as to Affirmative Defense 18, which is to be limited to the matter stated above. That Affirmative Defense shall be filed on or before 10 days following the entry of this Order.

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED: October 30, 2001**

22