Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5437 | **DATE** | 9/5/2002 |
| **CASE TITLE** | H.R.R. ZIMMERMAN CO. vs. TECUMSEH PRODUCTS CO. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the magistrate judge's November 2, 2001 Order is adopted in part and modified in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 09 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 127 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 02 SEP -6 AM 11:29 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
SEP 0 9 2002

| | |
|---|---|
| H.R.R. ZIMMERMAN CO., an Illinois Corporation, d/b/a INDUSTRIAL ENGINE & PARTS DIVISION, Plaintiff, v. TECUMSEH PRODUCTS CO., a Michigan Corporation, Defendant. | Judge Ronald A. Guzmán 99 C 5437 |

## MEMORANDUM OPINION AND ORDER

Pursuant to Federal Rule of Civil Procedure ("Rule") 72, Plaintiff H.R.R. Zimmerman Co. ("Zimmerman") and Defendant Tecumseh Products Co. ("Tecumseh") have filed objections to Magistrate Judge Geraldine Soat Brown's order of November 2, 2001, which partially granted and denied Tecumseh leave to file eight additional affirmative defenses. *H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.*, No. 99 C 5437, 2001 WL 1356153 (N.D. Ill. Nov. 2, 2001) (Brown, M.J.). For the reasons stated herein, the order is adopted in part and modified in part.

## FACTS

This case arises out of the termination of an agreement between Industrial Engine & Parts ("Industrial Engine"), an operating division of Zimmerman, and Tecumseh, under which Industrial Engine served as a distributor of Tecumseh's small engine equipment. Tecumseh terminated that relationship on February 23, 1999. Zimmerman filed this action in August 1999, alleging breach of a 1988 written distributor agreement and violation of the Illinois Franchise Disclosure Act (815 ILL. COMP. STAT. § 705 *et seq.*) ("the IFDA") for terminating the agreement without good cause. This Court granted Tecumseh's motion for summary judgment on the common law breach of contract claim in March 2001; only the statutory claim under the IFDA remains. *H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.*, No. 99 C 5437, 2001 WL 289867, at *5 (N.D. Ill. Mar. 15, 2001) (Guzmán, J.).

Under the agreement, Industrial Engine sold Tecumseh small engine parts within a sales territory that included Illinois, Indiana, Iowa, Wisconsin, and Michigan. Tecumseh terminated the agreement via letter, which did not cite any cause for the termination. While the terms of a 1988 written distributor agreement, the Central Warehouse Distribution Agreement ("Agreement"), provided for termination at will, the IFDA requires that good cause be shown. The Agreement also required that Industrial Engine "exercise its best efforts in the promotion and sale of the equipment and to maintain and travel an adequate force of Salesmen to properly service its territory." (Agreement, ¶ b-1, quoted in proposed Affirmative Defense 13.) Tecumseh later learned in discovery that Mr. Andy Zimmerman, Industrial Engine's general manager, had inaccurately represented in February 1999 the number of Industrial Engine personnel devoted to selling Tecumseh products. However, Tecumseh admittedly was unaware of this at the time it terminated the agreement.

Tecumseh originally sought leave in July 2000 to file an amended answer incorporating six new affirmative defenses and a counterclaim. Magistrate Judge Soat Brown's ruling on that previous request, which is not before this Court, denied Tecumseh leave to file proposed affirmative defenses that the IFDA's application would violate the Commerce Clause of the United States Constitution. *H.R.R. Zimmerman Co. v. Tecumseh Prods. Co.*, No. 99 C 5437, 2001 WL 184982, at *6-7 (N.D. Ill. Feb. 22, 2001). She held that Tecumseh's argument under the Commerce Clause was futile, as it failed to demonstrate that its decision to terminate was subject to multiple and inconsistent state regulations regarding franchise disclosures. *Id.* at*2. Magistrate Judge Soat Brown also denied without prejudice leave to file a proposed affirmative defense that Tecumseh had good cause to terminate Industrial Engine, on the grounds that Tecumseh had failed to provide authority for its argument that facts allegedly constituting good cause learned after actual termination would fulfill the requirements of the IFDA. *Id.* at *6-7.

Before this Court is Magistrate Judge Geraldine Soat Brown's ruling on Tecumseh's second request to add eight additional affirmative defenses to its answer, which was filed

following the entry of summary judgment on the common law breach of contract claim. The eight affirmative defenses, numbered 11 through 18 by Tecumseh, are as follows:

11. Limitation of Damages Under IFDA to Sales Within Illinois
12. The Commerce Clause
13. Tecumseh Had Good Cause in Accordance with Section 19 of the IFDA
14. Equitable Estoppel
15. No Private Cause of Action Exists Under IFDA
16. Section 19 of the IFDA Does Not Apply to the Agreement
17. If the IFDA does Apply, Section 20, and Not Section 19, Governs Tecumseh's Termination of Industrial Engine
18. Section 10.1 of the Illinois Equipment Fair Dealing Act ("the IEFDA")

Magistrate Judge Soat Brown denied Tecumseh leave to file affirmative defenses 11 through 17 and granted and denied in part leave to file affirmative defense eighteen. Tecumseh objects to the ruling with respect to affirmative defenses 12-15 and 17-18, while Zimmerman objects to the ruling regarding affirmative defenses 11, 12, and 18. For the reasons stated below, Magistrate Judge Soat Brown's recommendation is adopted in part and modified in part.

## DISCUSSION

This matter was referred to Magistrate Soat Brown's for pretrial motions. Because the Memorandum Opinion and Order proposes denying leave to amend the defensive pleading to include affirmative defenses, it is in fact dispositive of those portions of Tecumseh's defenses and claims. *Central States, Southeast & Southwest Areas Pension Fund v. Landvatter*, No. 89 C 5228, 1992 WL 93227, at *1 (N.D. Ill. Apr. 30, 1992). Therefore, the appropriate standard of review is governed by Federal Rule of Civil Procedure ("Rule") 72(b). *Id.* Dispositive matters referred to a magistrate judge for report and recommendation are subject to *de novo* review upon a timely objection. FED. R. CIV. P. 72(b). If a party fails to object to a magistrate's report and recommendation, or objects only to some parts of the report, he waives review of the issues on which he has not objected. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742 (7th Cir. 1999).

Leave to amend pleadings should be liberally granted when justice so requires. FED. R. CIV. P. 15(a). This district uses a three-part test to evaluate whether asserting a particular

3

affirmative defense is appropriate. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (adopting three-part test as set forth in *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 737 (N.D. Ill. 1982)). First, the matter must be properly pleaded as an affirmative defense. *Heller*, 883 F.2d at 1294. A court should not allow affirmative defenses that are mistitled or redundant by raising matters already placed at issue by denials. *Id.* at 1295.

Second, the matter must be adequately pleaded under the requirements of Rules 8 and 9 and set forth a short and plain statement of the defense. *Id.* An allegation must include either direct or inferential allegations regarding all material elements of the affirmative defense being asserted. *United States v. Hartz Constr. Co., Inc.*, No. 98 C 4785, 2000 WL 1220919, at *7 (N.D. Ill. Aug. 18, 2000). Bare legal conclusions attached to narrated facts are insufficient. *Heller*, 883 F.2d at 1294.

Third, the matter must withstand a challenge under Rule 12(b)(6). *Id.* If, when viewed in the light most favorable to the party asserting the affirmative defense, there is no set of facts that defendant can plead that would defeat the complaint, then leave to include the affirmative defense should be denied. *Id.* Similarly, if the allegation fails to state a claim upon which relief can be granted, the court should not allow it. *Id.*

### A. Proposed Affirmative Defenses 11 and 12: Limitation of Damages Under the IFDA to Sales Made Within Illinois

Proposed affirmative defenses 11 and 12 deal with the same issue: whether the IFDA applies to sales made by Tecumseh outside of Illinois. While it initially appeared that Tecumseh was asserting a broader argument in affirmative defense 12 that the IFDA was invalid entirely as a violation of the dormant commerce clause, it appears now that the assertions made in both defenses are identical: namely, that the IFDA cannot encompass damages incurred from lost sales activity outside of Illinois.

This question involves two issues, which may explain why Tecumseh proposed two distinct affirmative defenses. The first issue, one of statutory construction, is whether the

language of the IFDA permits its application to sales made by Illinois franchises outside of the state. This appears to be the allegation asserted in affirmative defense 11. If the language of the IFDA does permit its application to extraterritorial sales, then the second issue is whether that unconstitutionally burdens interstate commerce. This is the allegation asserted in Tecumseh's affirmative defense 12. Necessarily, if the language of the IFDA does not permit its application to sales made outside of the state, then there is no constitutional issue.

The court notes that these arguments have not been waived by Tecumseh's failure to object to Magistrate Soat Brown's ruling of February 2001. Its previous Commerce Clause challenge did not include allegations surrounding the damages claimed by Industrial Engine. It merely stated, in conclusory fashion and without factual support, that the IFDA subjected Tecumseh to multiple and inconsistent state regulations under the agreement with Industrial Engine.

The IFDA's requirements apply only to franchisees located within the state. 815 ILL. COMP. STAT. 705/3 (2002). Tecumseh does not contest that the IFDA requires that it provide good cause for terminating the agreement with Industrial Engine. Rather, it contests the allowance of damages under the IFDA for economic activity occurring under the agreement but outside of the state. The statute is silent as to whether damages incurred by Illinois franchisees from lost sales outside of Illinois are recoverable. 815 ILL. COMP. STAT. 715/26 (2002). The Illinois Supreme Court has held that when a statute is silent as to its extraterritorial effect, there is a presumption that it has none. *Wimmer v. Koenigseder*, 484 N.E.2d 1088, 1091-92 (Ill. 1985).

The Seventh Circuit addressed a similar issue under the Wisconsin Fair Dealership Law ("the WFDL") in *Morley-Murphy Co. v. Zenith Electronics Corporation*. 142 F.3d 373 (7th Cir. 1998). Finding that the defendant had terminated the agreement without good cause, a jury awarded the plaintiff damages incurred within its sales territory under the franchise agreement, but for activities occurring in dealerships outside Wisconsin. *Morley-Murphy*, 142 F.3d at 378. Recognizing that permitting the recovery of damages under for activity occurring outside of

Wisconsin would pose serious constitutional issues, the Seventh Circuit interpreted the WFDL's silence on its scope to mean that it would not apply extraterritorially, thereby avoiding the constitutional issue. *Id.* at 390.

Unlike Industrial Engine, the plaintiff in *Morley-Murphy* maintained physical dealerships outside of Wisconsin under the agreement. However, that distinction is not material in determining whether an extraterritorial application of the IFDA would raise a potential issue under the Commerce Clause of the Constitution. In discussing the constitutional question posed by a potential extraterritorial application of the WFDL, the Seventh Circuit framed its argument in terms of economic activity occurring outside of Wisconsin being subjected to Wisconsin law. *Id.* at 379. Wisconsin was free to protect franchisees by restricting a franchisor's ability to terminate agreements. *Id.* Its statutory scheme would benefit Wisconsin franchisees, while imposing costs, if any, on Wisconsin consumers. *Id.* But by allowing damages incurred by out-of-state dealerships, Wisconsin franchisees would benefit at the expense of out-of-state consumers. *Id.*

The Seventh Circuit has also recognized in persuasive dictum that permitting IFDA damages accruing from sales outside of Illinois raises a potential Commerce Clause issue. *To-Am Equip. Co., Inc. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 152 F.3d 658, 662 (7th Cir. 1998) (noting that "the parties have not addressed the possible significance of the fact that some portion of To-Am's territory was in Indiana," and subsequently refusing to address any unraised issue of extraterritorial application). In *To-Am*, the Illinois plaintiff-franchisee maintained no physical presence within Indiana, yet claimed damages arising from the wrongful termination of its franchise agreement for anticipated Indiana sales. *To-Am*, 152 F.3d at 662. The court declined to address the potential issues raised by the extraterritorial application of the IFDA because neither party had raised them. *Id.*

The issues raised here are identical to those in *To-Am*, and legally indistinguishable from those in *Morley-Murphy*. While the exact nature of the damages claimed by Industrial Engine is

6

unclear from the record at this point, it is undisputed that it is seeking recovery for activities under the agreement that occurred outside of Illinois. While Industrial Engine does not maintain physical dealerships outside of Illinois, allowing recovery under the IFDA for those activities would pose a constitutional issue. The public policy choices of the Illinois legislature would be imposed upon the consumers of Indiana, Iowa, Michigan, and Wisconsin.

Tecumseh has certainly stated a claim for restricting the scope of damages under the IFDA to sales occurring within the state. For these reasons, leave to amend its Response to include proposed affirmative defense 11 is granted. Because the IFDA is silent with respect to its permissible territorial scope of recovery, this Court refuses to permit its extraterritorial application. For these reasons, leave to amend to include proposed affirmative defense 12 is denied, as the Commerce Clause challenge to the IFDA is now moot.

### B. Proposed Affirmative Defense 13: Tecumseh Had Good Cause Under the IFDA To Terminate the Agreement

The central problem with affirmative defense 13 is that Tecumseh admittedly did not learn of Mr. Zimmerman's misrepresentations, its proposed good cause for termination, until after it had terminated the agreement with Industrial Engine. Its initial termination was essentially a business decision and provided no good cause under the IFDA. Tecumseh raises a two-part objection to Magistrate Judge Soat Brown's denial of leave to add affirmative defense 13. The first part of its objection relates to the court's discussion of the mend-the-hold doctrine, while the second relates to the definition of good cause under the IFDA.

The mend-the-hold doctrine estops a party from changing the ground on which it has refused to perform a contract. *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 364 (7th Cir. 1990). The magistrate court properly held that to avoid the mend-the-hold doctrine, Tecumseh would have to demonstrate that the information comprising its alleged good cause could not have been obtained at the time it sent the termination letter. *Zimmerman*, 2001 WL 184982, at *6 (citing *Harbor Ins.*, 922 F.2d at 365).

Even assuming *arguendo* that Zimmerman's misrepresentations were new information

7

that did not constitute a change in position barred by the mend-the-hold doctrine, Magistrate Judge Soat Brown correctly ruled that Tecumseh had failed to support its assertions that facts learned after termination can constitute good cause under the IFDA when there is no initial good cause provided to franchisees at termination. All of the cases cited by Tecumseh involved parties who had referenced good cause when terminating the agreement and subsequently learned after the termination of additional facts constituting good cause. *David Glen, Inc. v. SAAB Cars, USA, Inc.* 837 F. Supp. 888, 891 (N.D. Ill. 1993) (relying on information of wrongdoing learned subsequent to termination in addition to that already known at termination); *C.C.S. Chicago Recreation, Inc. v. Am. Suzuki Motor Corp.*, No. 90 C 2171, 1996 WL 99906, at *4 (N.D. Ill. Mar. 1, 1996) (finding that court may consider after acquired evidence of good cause for termination, but only in the context of good cause already having been identified at termination); *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, No. 94 C 50392, 1998 WL 299300, at *5 (N.D. Ill. Jun. 3, 1998) (allowing evidence of additional reasons for termination only after there was initial reason at termination). However, Tecumseh's original termination mentioned no good cause for termination whatsoever. Tecumseh fails to cite, and the Court has not found, any case that allows terminating parties to allege *de novo* that they had good cause after the fact of termination without good cause.

Therefore, there is no set of facts under which Tecumseh can plead that it had good cause under the IFDA to terminate the agreement. Affirmative defense 13 would not survive a Rule 12(b)(6) challenge because it is impossible on these facts for Tecumseh to plead the existence of good cause. For these reasons, Magistrate Judge Soat Brown's denial of leave to add affirmative defense 13 is adopted by the Court.

### C. Proposed Affirmative Defense 14: Equitable Estoppel

In order to state a defense of estoppel, Tecumseh must plead: (1) that Industrial Engine took some course of action, (2) upon which Tecumseh reasonably relied, (3) causing Tecumseh to change its position for the worse. *Zimmerman*, 2001 WL 1356153, at *4 (citing *Bobbitt v.*

8

*Victorian House, Inc.*, 532 F. Supp. 734, 738 (N.D. Ill. 1982)). Tecumseh argues that it reasonably relied on Mr. Zimmerman's misrepresentations regarding Industrial Engine staffing. Consequently, it changed its position for the worse by terminating the agreement at will and not citing to the alleged good causes of (1) Industrial Engine's failure to comply with the provisions of the agreement requiring its best efforts to service its sales territory, including adequate staffing; and (2) Mr. Zimmerman's misrepresentations.

Proposed affirmative defense 14 can only survive a Rule 12(b)(6) challenge if the understaffing or Mr. Zimmerman's misrepresentations constitute good cause under the IFDA. Otherwise, there are no facts under which Tecumseh can plead that it changed its position for the worse. Section 19 enumerates examples of good cause for termination, but this list is not exhaustive. 815 ILL. COMP. STAT. 705/19 (stating that "good cause includes, but is not limited to . . . .")

The two types of good cause most relevant to this case are those enumerated in Sections 19(b) and 19(c)(4). Good cause under Section 19(b) is the franchisee's failure to comply with any lawful provisions of the franchise or other, given notice and reasonable opportunity to cure it, which need not exceed 30 days. 815 ILL. COMP. STAT. 705/19(b) (2002). Good cause under Section 19(c)(4) does not require notice and a reasonable opportunity to cure the default, rather it comprises the franchisee's repeated failure to comply with the lawful provisions of the franchise or other agreement. 815 ILL. COMP. STAT. 705/19(c)(4) (2002).

While good cause under Section 19(b) requires notice and an opportunity to cure the default, meeting this requirement would obviously have been impossible for Tecumseh when its allegations of misrepresentations are taken as true. However, Tecumseh still must plead that, had it known of the continued understaffing, it would have provided Industrial Engine with notice and an opportunity to cure its default. When the phrase "for cause" in proposed affirmative defense 14 is liberally construed to include the statutory terms requiring notice and opportunity to defend in Section 19(b), Tecumseh has adequately alleged its claim of equitable estoppel.

9

Even if Tecumseh's claim is not so generously interpreted regarding the requirements of Section 19(b), it cannot be said that there is no set of facts under Section 19(c)(4) under which it may state a defense. For example, the evidence may show that Industrial Engine was continuously and repeatedly under-staffing its sales territory in violation of the "best efforts" provision. Such facts, if proven under the allegations of misrepresentation, may be sufficient to provide a defense. It is not necessary at the pleading stage for Tecumseh to establish definitively each and every instance of under-staffing. Rather, the appropriate test under Rule 12(b)(6) is whether, when the pleading is construed liberally, there is clearly no set of facts within the parameters of the pleadings which would establish a defense.

Thus, we disagree with Magistrate Judge Soat Brown that proposed affirmative defense 14 would not survive a 12(b)(6) challenge, since there are possible facts which can establish that Tecumseh changed its position for the worse in reliance on Mr. Zimmerman's misrepresentations. For these reasons, the denial of leave to amend to add proposed affirmative defense 14 is rejected.

### D. Proposed Affirmative Defense 15: *No Private Cause of Action Exists Under the IFDA*

In what is perhaps Tecumseh's weakest proposed affirmative defense, it alleges that a 1987 amendment to the IFDA removed the right to private civil actions for wrongful termination, and that a 1992 amendment clarifying the existence of a private cause of action cannot be applied retroactively to the 1988 Agreement. (Def.'s Reply Pl.'s Resp. Tecumseh's Mot. Leave File Add'l Affirmative Defenses, at 3.) Such a retroactive application of the amendment, according to Tecumseh, would unconstitutionally impair its contract rights in violation of Article I, § 10 of the United States Constitution.

*Landgraf v. USI Film Products* guides the determination of whether a statutory amendment has retroactive affect. 511 U.S. 244, 280 (1994); *see Commonwealth Edison Co. v. Will County Collector*, 749 N.E.2d 964, 971-72 (Ill. 2001) (following *Landgraf*). Under the *Landgraf* test, if the legislature has clearly indicated an amendment's temporal reach, then its

intent must be given effect unless the Constitution prohibits it. *Landgraf*, 511 U.S. at 280. If the legislature has not clearly expressed an amendment's temporal reach, then a court must discern whether applying the statute would have a retroactive impact, i.e., whether it would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. Absent a retroactive impact, the statute may be applied. In the event of a retroactive impact, the court must presume that the legislature did not intend that it be applied. *Id*.

The 1992 amendment specifically stated the legislature's intent to clarify the existence of a private cause of action, not to create a new one. *Zimmerman*, 2001 WL 1356153, at *6. Because the legislature's intent is clear that the 1992 amendment should apply to the 1988 agreement, it should be so applied unless the Constitution bars it. Tecumseh alleges that the amendment unconstitutionally impairs its contractual rights. However, As Magistrate Judge Soat Brown correctly noted, even in 1988 when Tecumseh entered into the Agreement, the IFDA required good cause for termination. Thus, an application of the 1992 amendment to the Agreement would not impair Tecumseh's contract rights. *Id*. Defendant has entirely misinterpreted the law on this point. For this reason, Magistrate Soat Brown's denial of leave to amend to include proposed affirmative defense 15 is adopted.

### E. *Proposed Affirmative Defense 16: Section 19 of the IFDA Does Not Apply to the Agreement*

Neither party objected to Magistrate Judge Soat Brown's ruling on affirmative defense 16. If a party fails to object to a magistrate's report and recommendation, or objects only to some parts of the report, he waives review of the issues on which he has not objected. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742 (7th Cir. 1999). As such, any and all objections to that ruling are waived.

11

## F. Proposed Affirmative Defense 17: If the IFDA Does Apply, Section 20, and Not Section 19, Governs Tecumseh's Termination of Industrial Engine

Section 20 of the IFDA addresses renewal, and not termination, of franchise agreements.[1] It requires the franchisor to send a notice of intent not to renew at least six months in advance of the expiration date. 815 ILL. COMP. STAT. 705/20 (2002). Tecumseh alleges that, if the IFDA applies to its agreement with Industrial Engine, Section 20, and not Section 19, should apply. While Tecumseh's assertions might lead one to believe it is seeking a different standard defining its obligations in ending its relationship with Industrial Engine, the thrust of its argument focuses on damages under Section 19. Tecumseh asserts that since the agreement with Industrial Engine had no fixed end date, it was continuously renewing and subject to the provisions of Section 20. Consequently, regardless of whether Industrial Engine possessed the requisite notice under Section 20(b), it cannot claim damages for greater than six months after the termination, since it was only entitled to six months' notice under Section 20.

The IFDA's good cause requirements of Section 19 apply equally to agreements with and without fixed terms. *Carl A. Haas Auto. Imports, Inc. v. Lola Cars Ltd.*, 933 F. Supp. 1381, 1394 (N.D. Ill. 1996). Tecumseh cites no directly relevant case law that would support its position that Section 20 applies in this case, which involves the termination, not the renewal, of the franchise agreement. The construction Tecumseh proposes reaches beyond the plain and ordinary meaning of Section 20. By definition, renewal is not an issue that arises in an agreement with no fixed term.

For these reasons, Magistrate Judge Soat Brown's conclusion that Tecumseh's argument was more appropriately framed in terms of the scope of damages for a claim under Section 19

---

[1] Section 20 of the IFDA, 815 ILL COMP. STAT. 705/20, provides:

Nonrenewal of a franchise. It shall be a violation of this Act for a franchisor to refuse to renew a franchise of a franchised business located in this States without compensating the franchisee either by repurchase or by other means for the diminution in the value of the franchised business caused by the expiration of the franchise where: ...

(b) the franchisee has not been sent notice of the franchisor's intent not to renew the franchise at least 6 months prior to the expiration date or any extension thereof of the franchise.

12

was correct. Moreover, Tecumseh has already placed the amount of damages under Section 19 at issue with its denials. Tecumseh remains free to contest Industrial Engine's calculation of damages, including any purported allegations for damages incurred over an indefinite period of time. Magistrate Judge Soat Brown's denial of leave to amend to include affirmative defense 17 is adopted by the Court.

### G. *Proposed Affirmative Defense 18: Section 10.1 of the IEFDA*

Proposed affirmative defense 18 is based upon Section 10.1 of the IEFDA, an amendment which became effective January 1, 2000. 815 ILL. COMP. STAT. 715/10.1. The IEFDA itself was enacted in 1983. 815 ILL. COMP. STAT. 715/1. Section 10.1 exempts "retailers and wholesalers, manufacturers, and distributors of inventory" from the provisions of the IFDA. 815 ILL. COMP. STAT. 715/10.1. Because the IEFDA was not raised in Industrial Engine's complaint, this matter is properly pleaded as an affirmative defense. *Evergreen Media Corp. v. Radio & Television Broad. Eng'rs, Local Union No. 1220 of the Bhd. of Elec. Workers*, 983 F. Supp. 731, 737 (N.D. Ill. 1997). Tecumseh alleges first that Section 10.1 applies to its agreement to Industrial Engine. It further asserts that Section 10.1 bars Industrial Engine's claim or, alternatively, limits the damages available under the IFDA claim.

At issue first is whether Section 10.1 applies to the relationship between Industrial Engine and Tecumseh. Citing to the legislative history of the IEFDA, Industrial Engine argues that it does not. It contends that the IEFDA was originally intended to protect independent farm equipment dealers, who often were forced to purchase and maintain large amounts of expensive equipment for sale that they were often "stuck with" if their businesses failed. *Greenview Ag Ctr., Inc. v. Yetter Mfg. Co.*, 246 Ill. App. 3d 132, 139, 615 N.E.2d 395, 400 (4th Dist. 1993). While that may have been the original impetus for the IEFDA, the plain language of the statute does not confine itself to entities in the farming equipment market.

Inventory under the IEFDA is defined as "farm implements, farm machinery, attachments, accessories and repair parts, outdoor power equipment, construction equipment,

industrial equipment, attachments, accessories and repair parts." 815 ILL. COMP. STAT. 715/2(2). As Magistrate Judge Soat Brown correctly pointed out, it cannot be demonstrated that there is no set of facts under which Tecumseh can plead for the application of Section 10.1. Contrary to Industrial Engine's assertions, whether the devices it sold under the Agreement qualify as inventory under Section 10.1 is an issue of fact. In *Greenview Ag Center, Inc. v. Yetter Manufacturing Co.*, for example, the court considered not only the devices held and sold under the agreement at issue, but normal business practices in the industry to determine whether the IEFDA's definition of "inventory" was satisfied. 615 N.E.2d at 399-400. For these reasons, Magistrate Judge Soat Brown correctly concluded that Tecumseh's claim that Section 10.1 applies survives a Rule 12(b)(6) motion.

The second issue posed by affirmative defense 18 is whether the application of Section 10.1, enacted in January 2000, would bar Industrial Engine's claim under the 1999 termination of a 1988 agreement. As with affirmative defense 15, this is an issue of retroactive application governed by the *Landgraf* test. Section 10.1 does not specify its temporal scope. In absence of an explicit statement of retroactivity by the legislature, this Court must determine whether applying the statute to this Agreement would have a retroactive impact as defined in *Landgraf*. Applying the IEFDA to bar Industrial Engine's right to bring a cause of action against Tecumseh would certainly have a retroactive impact. This impairs a right that Industrial Engine possesses as an Illinois franchisee under the Agreement to sue for wrongful termination, a right it had when it acted in filing the suit, well in advance of Section 10.1's January 2000 enactment.

Tecumseh argues that there is no issue of retroactivity, since the original 1983 version of the IEFDA contained an explicit temporal provision governing the prospective application of all provisions of the IEFDA from 1983 onward. Since the legislature did not specifically exclude the 2000 amendment from this preexisting temporal provision, Tecumseh argues that it is effective as of 1983. This argument stands the presumption against retroactivity on its head, and accordingly, the Court rejects this argument.

The third and final issue raised by Tecumseh is whether the 2000 amendment limits the scope of damages recoverable under the IFDA claim. Industrial Engine's damages computation rests on the assumption that, as its agreement with Tecumseh had no fixed endpoint, it is entitled to damages accruing for an indefinite period into the future. Tecumseh argues that Industrial Engine's expectation of damages arising from the Agreement cannot extend past the enactment of Section 10.1 in January 2000. If the Agreement had not been terminated, then the longest it could have continued was January 2000, at which point the IFDA became inoperative due to the exception provided in Section 10.1. This question does not involve issues of retroactive application of Section 10.1; on the contrary, it applies the amendment prospectively within the context of Industrial Engine's theory of indefinitely accruing damages.

For these reasons, Magistrate Judge Soat Brown's decision granting Tecumseh leave to claim that Section 10.1 of the IEFDA applies and limits the scope of damages under the IFDA claim is adopted by the Court.

## CONCLUSION

For the above reasons, the magistrate judge's November 2, 2001 Order is adopted in part and modified in part. Tecumseh is granted leave to amend its pleading to add Affirm. Def. #11 (Limitation of Damages Under IFDA to Sales Made Within Illinois); and Affirm. Def. #14 (Equitable Estoppel). Tecumseh is denied leave as to Affirm. Def. #12 (Commerce Clause); Affirm. Def. #13 (Good Cause § 19 of IFDA); Affirm. Def. #15 (No Private Cause of Action Exists Under IFDA); Affirm. Def. #16 (§19 of IFDA does not apply); and Affirm. Def. #17 (§20 of IFDA applies). As to Affirm. Def. #18 (IEFDA), the Court grants Tecumseh leave to raise Affirm. Def. #18, but only with regard to §10.1 of IEFDA's effect on damages.

**SO ORDERED**　　　　　　　　　　　　　ENTERED: 9-5-02

　　　　　　　　　　　　　　　　　　　　**HONORABLE RONALD A. GUZMAN**
　　　　　　　　　　　　　　　　　　　　**United States Judge**

15